IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL NO. 13-00005-001 (RLW) |
| v. | : | |
| | : | |
| | : | |
| SCOTT J. BLOCH | : | |
| | : | |
| Defendant. | : | |


## SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this supplemental memorandum in aid of

sentencing in the above referenced matter. At the first sentencing hearing scheduled in the case,

on May 13, 2013, the court raised two potential sentencing guidelines adjustments that the Court

indicated may apply to the defendant's offense level. The potential adjustments were

Aggravating Role, Abuse of Position of Trust (§3B1.1) and Obstruction of Justice (§3C1.1). In

addition, the Court requested that the parties supplement the record with additional facts to

provide further context for the charged conduct. The government submits the following

additional information and supplemental points and authorities for consideration by the Court for

purposes of sentencing.

I.      **Procedural Background**

On February 12, 2013, the defendant Scott J. Bloch ("BLOCH") pled guilty before this

court to Misdemeanor Depredation of Government Property, in violation of 18 U.S.C. § 1361

pursuant to a plea agreement with the government. At the sentencing hearing on May 13, 2013, the Court asked the parties about the applicability of two adjustments §3B1.1.3 (Abuse of Position of Trust) and §3C1.1 (Obstruction or Impeding the Administration of Justice). The Court also asked the parties to consider how the Court should treat other potentially relevant conduct including the facts of BLOCH's prior proceeding, and whether anything from that proceeding could be considered relevant conduct for the purposes of the defendant's sentencing on the instant offense. The Court rescheduled the defendant's sentencing for June 24, 2013, to allow time for the parties to submit supplemental filings in response to the court's questions.

## II.    Factual Background

On January 5, 2004, BLOCH became Special Counsel to the United States Office of Special Counsel ("OSC"). This office, among other things, is charged with safeguarding the merit-based employment system by protecting federal employees and applicants from prohibited personnel practices ("PPPs"). As such, OSC receives, investigates, and prosecutes allegations of PPPs with an emphasis on protecting federal government whistle blowers.

On March 3, 2005, a little more than one year after BLOCH took over as Special Counsel of the OSC, a complaint was filed against him by an attorney representing a group of unnamed OSC employees and several public employee interest groups, alleging violations of 5 U.S.C. § 2302(b) (hereinafter referred to as the "Katz Complaint").[1]

---

[1]     The Court has received letters from several members of the whistle blower community that have attempted to bring to the Court's attention various acts of purported misconduct by BLOCH. While these whistle blowers may have legitimate complaints in civil or administrative proceedings, it is important not to conflate civil/administrative wrongs with criminal ones. Criminal cases, unlike civil or administrative complainants and proceedings, demand the highest burden of proof. In criminal proceedings, the government has the ability to compel testimony and evidence -- unavailable to civil and administrative litigants -- in order to assure that it has a complete record before deciding what criminal charges, if any, could or

On October 5, 2005, seven months after the Katz Complaint was filed, the Office of Personnel Management's Office of Inspector General ("OPM-OIG") opened an investigation based on the allegations contained in the Katz Complaint. On October 17, 2005, as part of this investigation, OPM-OIG sent a request to the Deputy Special Counsel for OSC asking that the agency "retain any and all documents relevant to the March 3, 2005 complaint." OPM's official investigation began in March 2006, and interviews and document requests ensued.

In December 2006, fourteen months after BLOCH was notified that his office had become the subject of an investigation by the OPM-OIG, BLOCH directed an OSC employee to hire a technician from the computer company Geeks On Call to perform a "seven-level" wipe on the local hard drive of his government-issued laptop computer, as well as two other computers, used by former OSC employees.

Prior to December 18, 2006, the day of the visit by Geeks On Call, BLOCH enlisted the aid of other OSC staff members regarding his decision to hire Geeks On Call. He directed a member of his senior staff to contact Geeks On Call to perform a seven-level wipe of his OSC computer. On the morning of December 18, 2006, a Geeks On Call technician arrived at OCS's office in the District of Columbia. BLOCH was not present, and a senior staff member called BLOCH to inquire about what BLOCH wanted the technician to do while he waited for BLOCH to arrive to have his computer serviced. BLOCH instructed the senior staff member to direct the

---

should be brought in any particular case.

The frustrations expressed by the whistle blower community are perhaps understandable, given their strong feelings regarding Mr. Bloch, and their belief in the validity of the civil and administrative cases they have brought. The government bears the obligation in all criminal cases to investigate and assess the evidence and circumstances dispassionately, and to carefully consider all of the evidence available to support a criminal charge.

technician to perform a "seven-level wipe" of the OSC computers assigned to two former OSC

employees. Later that afternoon, the technician was instructed to perform a seven-level wipe on

BLOCH's OSC laptop computer. Any documents saved to the "H:" drive were backed up on the

agency's network servers, and not affected by this procedure. Any documents saved only on the

laptop's "C:" drive would have been removed. A member of the staff was provided with

invoices from Geeks On Call. These invoices were submitted to the agency for the work

performed on the computers, the invoices were paid by OSC.

In the weeks leading up to the December 2006 Geeks On Call visit, the OPM-OIG

investigation was ongoing and pending. During this time, BLOCH had experienced problems

with his OSC laptop computer. BLOCH had made numerous requests for assistance from the in-

house OSC IT staff to have them resolve these persistent computer problems. At one point, the

OSC IT staff considered replacing BLOCH's laptop altogether, although there is no evidence to

show that BLOCH knew this was a possibility at the time he hired Geeks On Call.

In addition, prior to the visit by Geeks On Call, BLOCH had had discussions with another

individual about computer problems that each of them had experienced. It was during these

conversations this individual informed BLOCH that this individual had used a company named

Geeks On Call to successfully fix his own computer, using among other things, a seven-level

wipe.

On December 13, 2006, approximately one week prior to the visit by Geeks On Call, the

hard drive on BLOCH's laptop computer "crashed." This event required the late night assistance

of the head of OSC's IT staff to restore the failing hard drive on BLOCH's laptop computer.

Following the restoration of his hard drive, some OSC employees recalled BLOCH seemingly

preoccupied with whether his computer had been fixed or whether it might crash again.  Other

OSC employees did not recall ever hearing BLOCH raise concerns about his computer following

the restoration of the hard drive.  Two days after BLOCH's hard drive was restored by OSC's IT

staff, BLOCH asked members of his staff to schedule the appointment with Geeks On Call.

The Geeks On Call visit was later publicized in a Wall Street Journal article in

late November 2007.  This article prompted the United States House of Representatives

Committee on Oversight and Government Reform to write a letter to the defendant about media

reports indicating that he had authorized a seven-level wipe of OSC computers and his staff.  By

letter dated December 6, 2007, the Committee indicated that it was interested in gaining a further

understanding of the issues raised by these reports, including the rationale for using non-

government IT personnel to perform this service, and the rationale for using a seven level wipe.

The Committee asked BLOCH to be interviewed by its staff about BLOCH's use of Geeks On

Call.

BLOCH was interviewed by members of the committee staff on March 4, 2008, regarding

his use of Geeks On Call in December 2006.  In the interview BLOCH was asked about, among

other things, whether and why he:  (I) directed the deletion of emails or files on any of BLOCH's

OSC issued computers in December of 2006 by using the computer repair service Geeks on Call;

(ii) directed that Geeks On Call delete emails or files contained on the computers of two of his

OSC aides; and (iii) directed that any such deletion of computer files be done by use of a "seven-

level wipe" process.  BLOCH was also asked whether he was familiar with the term "seven-level

wipe" before December of 2006.  BLOCH's answers to certain questions asked during the

interview, and BLOCH's responses, became the subject of his prior charged conduct and guilty

plea on April 27, 2010.  BLOCH was later permitted to withdraw his guilty plea in February
2013.

### III.    Applicability of Sentencing Adjustments and Enhancements

As part of the plea agreement, the parties agreed to a base offense level of 6 under the
federal sentencing guidelines and to a guidelines offense level of 4 after a 2-level reduction for
acceptance of responsibility.  The defendant's base offense level did not include adjustments for
aggravating role - Abuse of Position of Trust - or Obstruction of Justice.[2]  At the last hearing in
this matter, the Court asked the parties to consider the applicability of these adjustments for
purposes of Court's calculation of the defendant's offense level.  In the plea agreement, the
parties agreed that the Court is not bound by the parties stipulations, either as to questions of fact
or  the parties' determination of the applicable Guidelines range.  As part of the plea agreement,
the parties further reserved the right to answer any related inquiries from the Court in the event
the Court considers any Guidelines adjustments, departures or calculation different from any
contained in the plea agreement.  Therefore, in response to the Court's request, and consistent
with the terms of the plea agreement, the government submits the following additional points and
authorities related to these adjustments.

### A.    Aggravating Role For Abuse of Position of Trust (§3B1.1)

Under the federal sentencing guidelines, a 2-level adjustment for abuse of a position of
public trust is warranted when a defendant occupied a position of trust, and abused this position
in a manner that "significantly facilitated the commission, or concealment of the offense."
U.S.S.G. § 3B1.3; _see also_ U.S.S.G. § 3B1.3 app. n. 1; United States v. West, 56 F.3d 216, 219

---

[2]      The presentence report also did not include adjustments for abuse of position of
trust or obstruction of justice

(D.C. Cir. 1995).

For this adjustment to apply, the Court must determine  (1) whether the defendant occupied a position of trust; and if so (2) whether the defendant abused that position in a manner that *significantly* facilitated the commission or concealment of the offense. United States v. Broumas, 69 F.3d 1178 (D.C. Cir. 1995); U.S.S.G. § 3B1.3. Occupying a position of trust while engaging in illegal conduct does not by itself render an adjustment for abuse of a position of trust. Where the position did not significantly facilitate the crime, the adjustment is improper. United States v. Wadena, 152 F.3d 831 (8th Cir. 1998). For the adjustment to apply, the position held by the defendant must have made the commission of the offense *significantly* easier, not merely helped incidentally. United States v. Craddock, 993 F.2d 338, 343 (3d Cir. 1993) (the abuse of trust must make the commission or concealment of the crime significantly easier).

To determine whether a particular position constitutes a position of trust include, courts examine several factors including the defendant's duties and responsibilities as compared to those of other employees, the defendant's level of specialized knowledge, the defendant's level of authority in the position, and the level of public trust and the extent to which the position provides the defendant with the freedom to commit a difficult-to-detect wrong. United States v. Robinson, 198 F.3d 973, 977 (D.C. Cir. 2000) (citing United States v. Queen, 4 F.3d 925, 928-29 (10th Cir. 1993)). The abuse of trust "enhancement is concerned primarily with certain factors that make a crime more easy to commit . . . " United States v. Kaye, 23 F.3d 50, 54 (2d Cir. 1994).

BLOCH unquestionably held a position of public trust as the presidentially appointed Special Counsel to OSC. As Special Counsel, BLOCH had significant management discretion

over the operations of his agency, and was subject to little or no direct supervision.

The government's consideration of the application of this adjustment turned on the second factor, whether this position "*significantly*" aided the defendant in the commission of the instant offense, that is depredation of government property. The examples provided in the application notes in the commentary, and the facts in many of the cases applying the adjustment for abuse of position of trust generally include those situations where the defendant abused a discretion *inherent* in the exercise of his professional or managerial duties.

On the one hand, BLOCH occupied the highest position in his agency, and his decision to enlist Geeks on Call was not subject to further scrutiny by any higher authority within his agency. He was able to enlist other OSC employees to ensure that Geeks On Call were scheduled and that BLOCH's directions were carried out. On the other hand, BLOCH's position does not appear to have uniquely enabled him, vis-a-vis any other OSC employee, to enlist the services of Geeks On Call. Moreover, it is not clear that BLOCH's position made his conduct more difficult to detect where, under these circumstances, he enlisted other OSC staff to assist in making the call to the company, he scheduled the services to be performed during working hours when other OSC staff were present, and he had the invoices submitted for payment by the agency. While BLOCH's ability to execute his decision to hire Geeks on Call to perform the wipe of his computer perhaps was made easier because it was not subject to further approval, it does not appear from the circumstances of this offense that this position significantly contributed to his ability to enlist the services of Geeks On Call.

**B.**     **Obstructing or Impeding the Administration of Justice §3C1.1**

Section 3C1.1 of the federal sentencing guidelines provides for an adjustment for

obstruction of justice where: (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (a) the defendant's offense of conviction and any relevant conduct; or (b) a closely related offense. The government bears the burden of proving by a preponderance of the evidence that the defendant obstructed or impeded the administration of justice, justifying a two-level increase under this section.

This Circuit has held that the obstruction of justice enhancement applies where a defendant consciously act[s] with the *purpose* of obstructing of justice. United States v. Reeves. 586 F.3d 20 (D.C. Cir. 2009). See United States v. Bradbury, 189 F.3d 200, 204 (2d Cir.1999) ("In order to impose a § 3C1.1 obstruction-of-justice enhancement on a defendant who has raised an issue as to his state of mind concerning the conduct alleged to have obstructed or impeded the administration of justice, the court must make a *specific finding* of intent.")(emphasis added) (internal quotation marks omitted); see also United States v. Khimchiachvili, 372 F.3d 75, 78 (2d Cir. 2004) ("To enhance a sentence for obstruction of justice, the court must find that the defendant's statements unambiguously demonstrate an intent to obstruct.") (internal quotation marks omitted). Moreover, it is not enough that the defendant intended to obstruct the course of justice in some judicial or administrative proceeding. Rather, he must intend to obstruct justice "with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1(1), unless the conduct was "directly and inherently obstructive." Reeves, 586 F.3d at 298.

In the Application Notes to the Guidelines, the Sentencing Commission has included two

non-exhaustive lists of examples to illustrate some of the kinds of conduct that do and do not fall within §3C1.1.  See U.S.S.G. § 3C1.1 app. n. 4 and 5.  Application Note 3 provides that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness . . . [And] is not subject to precise definition, comparison of the examples set forth in Application Notes 4 and 5 should assist the court in determining whether application of this adjustment is warranted in a particular case."  Id. at app. n. 3.  By providing non-exhaustive illustrations, the Sentencing Commission has left considerable discretion to the Court in applying §3C1.1.  United States v. Maccado, 225 F.3d 766, 770 (D.C. Cir. 2000).

Application Note 4 provides examples of covered conduct including instances where the defendant provided a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense. Application Note 6 further defines "material" evidence as evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination. Examples of conduct ordinarily not covered under application note 5(B) include making false statements, not under oath, to law enforcement officers, unless it was a materially false statement that significantly obstructed or impeded the official investigation or prosecution of the instant offense.  See U.S.S.G. § 3C1.1 app. n. 4(G).  Thus, under the commentary to §3C1.1, the Court can consider whether BLOCH's unsworn statements to the Congressional committee regarding the extent of his knowledge of a seven-level wipe provide a proper basis for an obstruction adjustment under §3C1.1.

The analysis of the application of §3C1.1 to BLOCH's statements to the Congressional committee turns on the materiality of these statements as they relate to the offense of conviction.

See United States v. Zagari, 111 F.3d 307, 329 (2d Cir. 1997) ("Just because perjured testimony is given in a related action, and simply because that testimony is found to have been material to the related proceeding, does not mean that the statements are material to the instant [criminal] proceeding.") (*remanded* for further findings on the materiality of the perjury to the federal offense). See also United States v. McGovern, 329 F.3d 247, 252 (1st Cir. 2003). In examining the materiality of the conduct, the Court must look to whether the conduct has some impact on the investigation or prosecution of the offense of conviction. Materiality has been found where the defendant's conduct had the potential to weaken the government's case, or could have affected, to some reasonable probability, the outcome of the judicial process. However, the increase is not proper where the defendant's conduct does not significantly impede the investigation. See United States v. Morales-Sanches, 609 F.3d 637 (5th Cir. 2010) (reversing obstruction increase where defendant's phone call from police car did not hinder investigation); United States v. Ahmed, 324 F.3d 368 (5th Cir. 2003) (defendant's statements to FBI agents simply caused the FBI to go forward with their investigation as they normally would, tracking down possible leads).

BLOCH admitted during his plea colloquoy that he directed a seven-level wipe of OSC computers. While this admission directly contradicts his statements to the Congressional committee regarding his knowledge of a seven-level wipe, the government cannot find that these statements constitute sufficient evidence that BLOCH intended to obstruct the investigation and prosecution of the instant offense of conviction

Moreover, these statements did not rise to the level of materiality required for purposes of the adjustment in this case. While the statements were pertinent to the Congressional inquiry, a

related proceeding, the defendant's statements to the Congressional committee did not

significantly hinder or impede the government's investigation of the instant offense.  The

defendant's statements about his knowledge of a seven-level wipe occurred nearly one year after

the actual wipe had taken place.  By this time, the government's investigation of this offense was

well underway.  Moreover, because the defendant enlisted the aid of OSC staff to contact Geeks

On Call and to provide the instructions to the technician, evidence beyond BLOCH's statements

to the committee were well-known to the government.  Therefore, the defendant's statements

regarding the circumstances of the seven-level wipe cannot be said to have hindered the

government's investigation.

## Conclusion

Consistent with the parties' plea agreement, the government's position is that the adjustments for aggravating role - Abuse of Position of Trust and Obstruction of Justice do not apply. Should the court, however, choose to apply one or both adjustments, the government submits that the defendant's Guidelines offense level, after applying a 2-level reduction for acceptance of responsibility, is 8 and that at this level, the defendant remains within the Stipulated Guidelines range of 0 to 6 months.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. BAR NUMBER 447-889
555 4th Street, N.W., 5th Floor
Washington, D.C.  20530
(202) 514-6600

By: _____
DEBORAH L. CONNOR
D.C. Bar No. 452-414
Assistant United States Attorney
Chief, Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C.  20530
(202) 252-7871
deborah.connor@usdoj.gov

By: _____/s/_____
GLENN S. LEON
DOJ Criminal Fraud Section
NY Bar # 2621589
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20530
(202) 598-2239
glenn.s.leon@usdoj.gov